IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD MATHEWS, *et al.*,

        Plaintiffs,

    vs.                          Civil Action 2:12-cv-1033
                                            Magistrate Judge King

OHIO PUBLIC EMPLOYEES RETIREMENT
SYSTEM,

        Defendant.

## OPINION AND ORDER

This action arises out of the termination of the disability retirement benefits of plaintiff Richard Mathews.  Specifically, plaintiffs Richard Mathews and his wife Sandra Mathews assert state law claims of breach of contract, promissory estoppel and negligence and federal constitutional claims of termination of benefits in violation of procedural due process and equal protection.  Plaintiffs also challenge the constitutionality of O.R.C. §§ 145.20, 145.01, and 145.362 as unconstitutionally vague and violative of retirees' First Amendment rights to free speech, freedom of association, and freedom to participate in the political process.

This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of defendant *Ohio Public Employees Retirement System's Motion to Dismiss* ("*Defendant's Motion to Dismiss*"), Doc. No. 4, plaintiffs' response to that motion, *Plaintiffs' Memorandum in Opposition, Defendant's Motion to Dismiss* ("*Plaintiffs' Response*"), Doc. No. 8, and defendant's reply, *Ohio Public Employees Retirement System's Reply in Support of*

*Its Motion to Dismiss* ("*Defendant's Reply*"), Doc. No. 11.  For the reasons that follow, *Defendant's Motion to Dismiss* is **GRANTED** in part and **DENIED** in part.

## I.    Plaintiffs' Allegations

Plaintiffs' *Complaint*, Doc. No. 2, contains the following allegations:

Plaintiff Richard Mathews was an Ohio police office for more than twenty years until he suffered a debilitating medical condition in the spring of 1996.  *Id*. at ¶¶ 10-11.  Defendant Ohio Public Employees Retirement System ("defendant" or "OPERS") is a statutory public employee retirement system that was created by and is subject to, *inter alia*, O.R.C. § 145, *et seq.* and O.A.C. § 145, *et seq. Id*. at ¶¶ 2-3.  In April 1997, defendant awarded Richard Mathews disability retirement benefits.  *Id*. at ¶ 14.

In November 2009, Richard Mathews "was elected to serve as a Council Person for the Village Council in the city of New Richmond (Cleremont [sic] County, Ohio []) for the term January 2010 to December 2013." *Id*. at ¶ 20.  "Prior to accepting his appointment on Council, [] Richard Mathews conferred with the Village Administrator for the Village of New Richmond, Ohio and was assured that [he] could pay into Social Security, according to applicable R.C. § 144.05, as an elected official and would not be required to contribute to OPERS." *Complaint*, ¶ 21.  In compliance with R.C. § 145.362, Richard Mathews filed an annual report of earnings with defendant in March 2011 and 2012, "showing his earned income as an elected official for the Village of New Richmond, Ohio." *Id*. at ¶¶ 23-24.

2

On March 26, 2012, Richard Mathews

> received a letter from Defendant stating that, effective
> May 1, 2012, Plaintiff Richard Mathews would receive
> approximately . . . $1,640.22[] per month under the OPERS
> Service Retirement Plan B[]. Plaintiff Richard Mathews was
> also informed by Defendant that Plaintiff Richard Mathews
> would receive . . . $3,088.99[] per month if he was granted
> Unreported Service Credit from October 1, 2010 through
> April 30, 2012, (under the 2.25 years of OPERS Service
> Credit Plaintiff Richard Mathews earned when he served as a
> member of the New Richmond Village Council), which credit
> was to be added to his previous disability service
> credit[].

*Id*. at ¶ 25. In April 2012, Richard Mathews "received a telephone call from the OPERS Disability Office notifying him [that] his Disability Retirement would be terminated effective April 30, 2012, because of the income he had received while serving on Council for the Village of New Richmond." *Id*. at ¶ 26.

Richard Mathews applied for "Traditional Retirement benefits through OPERS" on April 3, 2012. *Id*. at ¶ 27.

On April 18, 2012, Richard Mathews "received a letter from Defendant indicating that Plaintiff Richard Mathews' Unreported Service Credit as an Elected Official on Council that takes place after June 30, 1991, was ineligible and would not be included as Additional Service Credit under OPERS." *Id*. at ¶ 28. Had Richard Mathews been given service credit for his service as an elected official, he would have received free health insurance and plaintiff Sandra Mathews would have received health insurance at a discounted rate. *Id*. at ¶ 25.

On May 1, 2012, Richard Mathews received "further correspondence" notifying him that he was no longer eligible for coverage through OPERS. *Id*. at ¶ 29. In response to his inquiry, Richard Mathews

3

received more detailed explanations from OPERS on June 7, September 18, and October 2, 2012, regarding the termination of his disability benefits. *See id.* at ¶¶ 31-34. Specifically, Richard Mathews was advised that he was prohibited from purchasing prior noncontributing service under O.R.C. § 145.20 because he "elected not to have his elective service covered by OPERS, choosing instead to be covered by Social Security." *Id.* Further, because Richard Mathews was receiving a disability benefit from OPERS when he was elected to public office, his disability benefits were terminated pursuant to O.R.C. § 145.362. *Id.*

"[A]t no time did Defendant provide Plaintiff Richard Mathews with written notice of his right to file and prosecute a Disability Benefit Termination Appeal after the termination of his disability benefits . . . ." *Id.* at ¶ 32.

## II. Standard

Defendant moves to dismiss plaintiffs' *Complaint* for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When a motion to dismiss addresses a court's jurisdiction, a plaintiff bears the burden of establishing jurisdiction. *See Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). "Specifically, the plaintiff must show that the complaint 'alleges a claim under federal law, and that the claim is substantial.'" *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)). Where, as here, the

4

motion to dismiss amounts to a facial attack on subject-matter jurisdiction, a court must take the allegations in the complaint as true, just as it would with a 12(b)(6) motion to dismiss. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *See Roth Steel Prods. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether dismissal on this basis is appropriate, a complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Fed. Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994). The United States Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III. Discussion

### A. Standing

As an initial matter, the parties dispute whether Sandra Mathews has standing to assert her claims. Standing is determined at "'the time the complaint is filed.'" *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001)). "A plaintiff must meet both constitutional and prudential requirements to establish individual standing." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citations and quotations omitted). A plaintiff must also meet the following prudential requirements: (1) a "'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties,'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (quoting *Warth*, 422 U.S. at 499), (2) "a plaintiff must present a claim that is 'more than a generalized grievance,'" *Smith*, 641 F.3d at 206 (quoting *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007)), and (3) "the complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional

6

guarantee in question." *Id.* (quoting *Valley Forge*, 454 U.S. at 475) (quotations omitted).

In the case presently before the Court, plaintiffs argue that Sandra Mathews has standing because she is a "potential beneficiary" under OPERS who will "lose disability retirement and other benefits as a result of the Defendant's improper termination of her husband's disability and retirement benefits." *Plaintiffs' Response*, pp. 19-20. Plaintiffs cite to *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549 (7th Cir. 1997); *Huisjack v. Medco Health Solutions, Inc.*, 492 F.Supp.2d 839 (S.D. Ohio 2007); and *Muller v. First Unum Life Ins. Co.*, 23 F.Supp.2d 231 (N.D.N.Y. 1998), for the proposition that Sandra Mathews has standing as a potential beneficiary. *Plaintiffs' Response*, pp. 19-20. Plaintiffs' arguments are without merit.

First, the cases relied on by plaintiffs for the proposition that potential beneficiaries have standing, *see Plaintiffs' Response*, pp. 19-20, are inapposite. Every case relied on by plaintiffs are ERISA actions, and ERISA expressly confers standing on ERISA beneficiaries. *See* 29 U.S.C. § 1132(a)(1). This is not an ERISA action. Second, the *Complaint* alleges that Sandra Mathews is a "member of and disability retirement [sic] and other beneficiary under" OPERS because she is "the spouse of Plaintiff Richard Mathews." *Complaint*, ¶ 2. Being the spouse of an OPERS member does not, however, render a person an OPERS member. *See* R.C. § 145.01(B) (defining an OPERS "member"). Finally, Sandra Mathews' claims are premised on the presumed loss of disability retirement benefits "as a result of the Defendant's improper termination of her husband's disability and retirement benefits."

*Plaintiffs' Response*, pp. 19-20.  Sandra Mathews has no legal right or interest, however, in the alleged "improper termination of her husband's disability and retirement benefits." *See Valley Forge*, 454 U.S. at 474.  Accordingly, Sandra Mathews' claims run afoul of the prudential limit on third-party standing; the *Complaint* does not allege facts and plaintiffs do not present arguments sufficient to confer standing on plaintiff Sandra Mathews.

      **B.  Due Process**

The *Complaint* alleges that plaintiffs' Fourteenth Amendment procedural due process rights were violated because plaintiffs received inadequate notice of the termination of Richard Mathews' disability benefits.  *Complaint*, ¶¶ 41-43.  Specifically, plaintiffs allege that they received notice by telephone that Richard Mathews' disability benefits would be terminated and that there "was a complete absence of written notice to Plaintiffs of any procedure available to appeal Defendant's termination of Plaintiffs' disability retirement and other benefits."  *Id*. at ¶¶ 26, 42.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "provides that certain substantive rights — life, liberty, and property — cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  To establish a procedural due process claim, plaintiffs must show that: (1) they possess an interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) the state deprived them of that interest, and (3) "the state did not afford them adequate procedural

8

rights prior to" that deprivation.  *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinerman v. Burch*, 494 U.S. 113, 125-26 (1990)).

The existence of a protected interest is the threshold determination in any procedural due process claim.  *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996).  Plaintiffs claim such an interest in continued disability benefits.  Whether a person possesses a property interest is traditionally a question of state law. *See* Lo*gan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). "Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  "The due process clause protects only those interests to which one has a 'legitimate claim of entitlement.'" *600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 588 (6th Cir. 2013) (quoting *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)).  "A statute creates a protected property interest when it 'both confers [a] benefit and limits the discretion of the [government] to rescind the benefit.'" *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, No. 11-4054, 2013 WL 791410, at *10 (6th Cir. Mar. 5, 2013) (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir. 2002)).

In the case presently before the Court, the parties disagree whether Richard Mathews possessed a property interest in his

disability benefits after becoming an elected official.  Plaintiffs argue that a legitimate claim of entitlement to disability benefits was established when he was approved for disability benefits. *Plaintiffs' Response*, pp. 7-8.  Defendant argues that, pursuant to O.R.C. § 145.362, Richard Mathews "does not have a protected property interest in retaining his disability benefits upon election to a public office." *Defendant's Motion*, p. 5.  The Court disagrees with defendant's contention.

OPERS provides disability coverage to its members and pays benefits upon the determination by its retirement board that a member qualifies for a disability benefit. *See* O.R.C. § 145.35.  The government cannot thereafter suspend or terminate disability benefits without complying with § 145.362.  A legitimate claim of entitlement to OPERS disability benefits is therefore established by the award of benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("[T]he interest of an individual in continued receipt of [Social Security disability benefits] is a statutorily created 'property' interest protected by the Fifth Amendment."); *Am. Premier Underwriters, Inc.*, 2013 WL 791410 at *10 ("Grants of . . . disability benefits . . . have [] sufficed to meet the 'benefit conferral' requirement."); *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 856-57 (6th Cir. 2012) (there is no property interest if the government has the discretion to rescind the benefit entirely).  As a recipient of OPERS disability benefits, and thus a holder of a protected property interest, Richard Mathews is entitled to some degree of process before being deprived of those benefits. *See Eldridge*, 424 U.S. at 335.

10

In order to determine exactly what procedures are required to protect a particular property interest, courts consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* "The United States Supreme Court has consistently held that some form of a hearing is required prior to an individual being finally deprived of a property interest." *Chernin v. Welchans*, 844 F.2d 322, 325 (6th Cir. 1988) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974)). "The requisite hearing must be 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Here, O.R.C. § 145.362 provides for the termination of disability benefits upon the election of a benefit recipient to an office with an employer covered by the OPERS program. O.R.C. § 145.362. Ohio Administrative Code § 145-2-23 provides that, upon the termination of a disability benefit pursuant to § 145.362, "the member shall be notified in writing of such action" and of, *inter alia*, "[t]he member's right to file a written disability benefit appeal request." O.A.C. § 145-2-23(A), (B). Failure to submit a written appeal request within the allotted time "make[s] the retirement board's action final as to such . . . benefit." O.A.C. § 145-2-23(B)(3)(c). Furthermore, a failure to submit additional objective medical evidence with an appeal "make[s] the retirement board's action final." O.A.C. § 145-2-23(B)(3)(e).

Accepting the allegations in the *Complaint* as true, it is plausible that Richard Mathews was deprived of the opportunity to be heard prior to the final deprivation of his disability benefits. Richard Mathews "received a telephone call from the OPERS Disability Office notifying him [that] his Disability Retirement would be terminated effective April 30, 2012," but he alleges that he was not provided notice of his right to appeal the termination of his benefits pursuant to O.A.C. § 145-2-23. *See Complaint*, ¶¶ 26, 32. Accordingly, the Court concludes that the *Complaint* contains sufficient factual allegations to state a Fourteenth Amendment procedural due process claim on behalf of Richard Mathews.

**C.    Equal Protection**

The *Complaint* also asserts a claim under 42 U.S.C. § 1983 for an alleged denial of equal protection under the Fourth and Fourteenth Amendments. *Complaint*, ¶¶ 63-66. Specifically, the *Complaint* alleges that the "protections and safeguards of O.R.C. § 145 and other applicable law(s) and Regulation(s) for public employees paying into Defendant's retirement system were not applied fairly to Plaintiffs, and deprived Plaintiffs of the equal protection of the law." *Id*. at ¶ 65. Plaintiffs now articulate this claim as an "unconstitutional discrimination in violation of Plaintiffs' right to due process of law and/or equal protection [that] is also a due process claim." *Plaintiffs' Response*, p. 13.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, Sec. 1.  It

12

"'protects against arbitrary classifications, and requires that similarly situated persons be treated equally.'" *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005) (quoting *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002)).  If the government action at issue does not interfere with fundamental rights or target a suspect class, the government action is constitutional so long as it bears a rational relation to some legitimate end.  *See Romer v. Evans*, 517 U.S. 620, 632 (1996); *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).  An equal protection claim may be brought by a "'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In the case presently before the Court, plaintiffs do not argue that they are members of a protected class or that their fundamental rights have been violated. *See Plaintiffs' Response*, p. 13.  Instead, plaintiffs argue that Richard Mathews did not receive proper written notice and an opportunity to be heard unlike similarly situated OPERS disability benefit recipients whose benefits were terminated upon their election to public office. *See id*.  This alleged difference in treatment is a function, plaintiffs contend, of laws governing OPERS "not [being] applied fairly to Plaintiffs." *Complaint*, ¶ 65. Although not articulated as such, plaintiffs' claim in this regard is grounded on a "class of one" theory.  However, the *Complaint* fails to state a claim under a "class of one" theory because it fails to allege that there was no rational basis for the alleged difference in

treatment, that OPERS acted without a legitimate purpose, or that OPERS' actions were motivated by animus or ill-will. The allegation that the laws governing OPERS "were not applied fairly to Plaintiffs," *see Complaint*, ¶ 65, is simply insufficient to state an equal protection claim; the Fourteenth Amendment "guarantees equal laws, not equal results." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979).

    **D.    First Amendment**

The *Complaint* also alleges that O.R.C. § 145, *et seq.*, denies plaintiffs and "all other OPERS disability retir[ees] of their fundamental First Amendment constitutional rights of free speech, freedom of association, and freedom to participate in the political process by denying them the right to hold political office except based on the penalty of forfeiture of their disability benefits." *Complaint*, ¶ 53. Plaintiffs do not claim a "fundamental right to candidacy for elective office," nor do they allege that Richard Mathews "was not afforded his right to h[o]ld an elective office." *Plaintiffs' Response*, p. 12. Instead, plaintiffs argue that Richard Mathews' "disability benefits were terminated because he decided to hold an elective office, . . . all in direct violation of his constitutionally protected freedoms of speech and association." *Id*. Plaintiffs further argue that Richard Mathews, "a public employee disability benefit recipient, cannot be punished for choosing to participate in public affairs and associate as a member of Village Council for the Village of New Richmond, Ohio." *Id*.

14

The First Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment. *Carver v. Dennis*, 104 F.3d 847, 849 (6th Cir. 1997) (citing *Gitlow v. New York*, 268 U.S. 652, 666 (1925)). To establish a First Amendment retaliation claim, a plaintiff must establish three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)). "Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dis. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Id.* (citing *Doyle*, 429 U.S. at 287).

When a public employee claims retaliation by the government by reason of his association, that association is protected only if "(1) it touches on a matter of public concern and (2) there is no overriding state interest that would be undermined by the employee's speech or association." *Doherty v. City of Maryville*, 431 F. App'x 381, 386 (6th Cir. 2011) (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337–38 (6th Cir.

2010)). "If a public employee's conduct does not involve a matter of public concern, then it is not constitutionally protected, and the court need not evaluate the claim any further." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "Whether something is a matter of public concern is a question of law." *Id.* (citing *Connick*, 461 U.S. at 148 n.7).

In the case presently before the Court, the *Complaint* claims violation of the "First Amendment constitutional rights of free speech, freedom of association, and freedom to participate in the political process by denying [Richard Mathews and OPERS disability retirees] the right to hold political office except based on the penalty of forfeiture of their disability benefits." *Complaint*, ¶ 53. The *Complaint* does not further identify the speech or association allegedly infringed, and plaintiffs have clarified that their claims are not based on a denial of the right to candidacy for elective office. *Plaintiffs' Response*, p. 12. Instead, plaintiffs cite to *Carver v. Dennis*, 104 F.3d 847, and *Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967), for the proposition that an OPERS disability benefit recipient cannot be subject to the termination of benefits "for choosing to participate in public affairs and associate as a member of Village Council for the Village of New Richmond, Ohio." *Plaintiffs' Response*, p. 12.

In *Carver*, a deputy county clerk sued a county clerk, claiming that the termination of her employment violated her First Amendment rights. *See Carver*, 104 F.3d at 848. The clerk's office consisted of two employees, *i.e.*, the county clerk and the deputy county clerk.

16

The deputy county clerk was an at-will employee and was discharged after she announced her candidacy for the county clerk's position. *See id.* at 850.  The United States Court of Appeals for the Sixth Circuit held that the deputy clerk's dismissal was not tantamount to the denial of a government benefit violative of "constitutionally protected interests" because the dismissal was based — not on patronage, political reasons, or speech addressing issues of public concern — but on "announcing [an] intention to take her boss's office."  *Id.* at 853.  Because there is no fundamental, constitutionally protected right to candidacy for elective office, the deputy clerk's discharge did not implicate her First Amendment rights. *Id.*  "To hold otherwise . . . would be to read out of the entire line of relevant Supreme Court precedent the factual requirements of political belief, expression and affiliation, partisan political activity, or expression of opinion, and to read into that precedent a fundamental right to candidacy."  *Id.*

In *Keyishian*, the United States Supreme Court invalidated as unconstitutionally vague a statutory scheme authorizing the removal of public school faculty members who made "treasonable or seditious" acts or utterances.  *Keyishian*, 385 U.S. at 597-604.  The Court also invalidated, as "sweep[ing] overbroadly into association which may not be proscribed," provisions making Communist Party membership *prima facie* evidence of disqualification for public school employment, because the provisions "proscribe mere knowing membership without any showing of specific intent to further the unlawful aims of the Communist Party."  *Id.* at 605-10.

17

*Carver* and *Keyishian* are inapposite to the facts and claims of this case. First, as discussed *infra*, O.R.C. §§ 145.01(A), 145.20, and 145.362 are not unconstitutionally vague, and plaintiffs do not challenge those provisions as overbroad. Second, unlike in *Carver*, this action does not concern the right to stand as a candidate for elective office. *See Plaintiffs' Response*, p. 12 ("Plaintiffs are not claiming that Plaintiff Mathews was not afforded his right to hold an elective office. . . ."). Third, unlike *Keyishian*, this case does not present an allegation that plaintiffs have been prohibited from associating with any particular group. Finally, the statutes at issue in this case do not require elected officials or public employees to certify under oath that they have not associated with a particular group, *see Keyishian*, 385 U.S. at 592, or to swear an oath of loyalty to the state as a condition of employment. *See Wiemann v. Updegraff*, 344 U.S. 183, 191 (1952).

The *Complaint* alleges nothing than bare conclusions that "rights of free speech" and "freedom of association" have been violated. *See Complaint*, ¶ 53. Plaintiffs neither allege nor argue that Richard Mathews was punished based on considerations of patronage, political reasons, political affiliation, *see Dye v. Office of the Racing Comm'n*, 702 F.3d 286 (6th Cir. 2012); *Lane v. City of LaFollette*, 490 F.3d 410, 419-20 (6th Cir. 2007), the expression of political beliefs, or speech addressing a matter of public concern. *See Boals v. Gray*, 775 F.2d 686, 692-93 (6th Cir. 1985). In fact, plaintiffs have not specified what, if any, speech has been implicated, and the *Complaint* does not allege what associations have been inhibited. *See Complaint*,

18

¶¶ 53.  The *Complaint* therefore fails to state a colorable retaliation claim under the First Amendment.

    **E.  Void for Vagueness**

The *Complaint* alleges that O.R.C. §§ 145.20, 145.01, and 145.362 are unconstitutionally vague, both facially and as applied. *Complaint*, ¶¶ 44-51.  A law is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id*.  One of the dangers of vague laws is that they allow for "arbitrary and discriminatory enforcement." *Id*.  Additionally, if a vague statute impacts First Amendment rights, it can deter people from exercising those rights, since "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Id*. at 108-09 (quotations and alteration omitted).

The statutes at issue are relatively simple.  Ohio Revised Code § 145.03 establishes a "public employees retirement system" (also known as "OPERS") for the "public employees of the state and of the several local authorities mentioned in section 145.01 of the Revised Code." O.R.C. § 145.03(A).  Except as otherwise provided in § 145.03, "membership in the system is compulsory upon being employed and shall continue as long as public employment continues." *Id*.  However, the statutory definition of "public employee" expressly excludes elected officials of, *inter alia*, the state or any township or municipal corporation.  O.R.C. § 145.01(A)(1).

Ohio Revised Code § 145.20, titled "[e]lective officials may join system; credit for prior service," provides that

> [a]ny elective official of the state of Ohio or of any
> political subdivision . . . shall be considered as an
> employee of the state or such political subdivision, and
> may become a member of the system upon application to the
> public employees retirement board, with all the rights,
> privileges, and obligations of membership.

O.R.C. § 145.20(A). In other words, although participation in OPERS is compulsory for "public employees," an elected official "may become a member of the system" if he or she elects to do so and if that elected official complies with the statutory requirements.

Plaintiffs argue that § 145.01(A) and § 145.20 are contradictory because the definition of "public employee" in § 145.01(A) specifically excludes elected officials, but § 145.20 provides that elective officials "shall be considered as an employee of the state"). *Plaintiffs' Response*, pp. 4-5. The Court disagrees. These statutes merely identify those persons who are included and those person who are excluded from mandatory participation in OPERS.

In making their void for vagueness argument, plaintiffs also contend that the alleged ambiguity in the definition of "public employee" was used "to support terminating [Richard Mathews'] disability benefits." *Plaintiffs' Response*, p. 4. According to plaintiffs, membership in OPERS determines whether a disability benefit recipient's benefits are terminated upon election to public office. *See Complaint*, ¶¶ 46 ("[T]he conflicting and ambiguous language in O.R.C. § 145.20 and O.R.C. § 145.01 makes it clear that the membership requirement into OPERS is permissive . . . ."), 47, 53 ("If the OPER statutes in O.R.C. § 145.20 or O.R.C. § 145.01 do

mandate membership or can be read to mandate membership of elective officials, and therefore forfeiture of disability benefits under O.R.C. § 145.362 . . . .”), 54 (“As a direct and proximate result of [the statutes] being interpreted and applied as mandating membership of elective officials, Plaintiffs . . . sustained damages and losses . . . of full disability retirement and other benefits.”).  Again, this Court disagrees.  Section 145.362 provides: “If a disability benefit recipient is restored to service by, or elected to an elective office with, an employer covered by this chapter, the recipient’s disability benefit shall cease.”  O.R.C. § 145.362.  Accordingly, because he was “elected to serve as a Council Person for the Village Council in the city of New Richmond (Cleremont [sic] County, Ohio []),” *see Complaint*, ¶ 20, which plaintiffs concede is an employer covered by OPERS, *see Plaintiffs’ Response*, pp. 4-5, plaintiff Richard Mathews’ disability benefits would have terminated by operation of § 145.362 regardless of whether or not he opted to become a member of OPERS. The statute is simply not ambiguous on this point.

Plaintiffs further argue that, because the statutes are vague, Richard Mathews should be permitted to buy OPERS service credits despite his decision to contribute to Social Security while he was an elected official.  *See id*. at p. 4.  Section 145.20 sets forth the requirements for an elected official to become a member of and to purchase OPERS credit for service as an elected official.  The statute expressly provides that an elected official who becomes an OPERS member may purchase credit for service, provided the official does not contribute to Social Security.  O.R.C. § 145.20(B)(1).  The statutory

21

requirements governing the purchase of OPERS service credit are clearly defined; regardless of whether Richard Mathews' participation in OPERS was compulsory, he is not entitled to purchase service credits because he opted, as an elected official, to contribute to Social Security instead of OPERS. *See Complaint*, ¶¶ 21, 31. Again, the statute is not ambiguous on this point. *See* O.R.C. § 145.20(B) ("Credit for service between January 1, 1935, and the date that membership is established, except service as an elective official that was subject to the tax on wages imposed by the 'Federal Insurance Contributions Act,' 68A Stat. 415 (1954), 26 U.S.C.A. 3101, as amended, may be secured by the elective official provided the elective official does all of the following . . . .").

The statutes at issue clearly set forth those persons who are included and those persons who are excluded from mandatory participation in OPERS. The statutes also provide sufficient notice of an elected official's right to purchase service credit and the circumstances that will result in the termination of OPERS disability benefits. The statutes do not contemplate or authorize the exercise of any degree of discretion, nor do they "delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *See Grayned*, 408 U.S. at 108-09. The "attendant dangers of arbitrary and discriminatory application" warned against in *Grayned* are therefore not present here. *See id*. Similarly, there is "no danger of arbitrary penal sanction or government imposed stigma" because the provisions are not criminal statutes. *See Ass'n of Cleveland Fire Fighters v. City of Cleveland*,

502 F.3d 545, 552 (6th Cir. 2007).  Under the circumstances, the Court concludes that plaintiffs can prove no set of facts that would entitle them to relief on their void for vagueness claim.

**F.    State Law Claims**

The *Complaint* also asserts state law claims of breach of contract, promissory estoppel and negligence.  All their state law claims are based on defendant's alleged failure to provide adequate notice and opportunity to appeal the termination of disability benefits and to comply with O.R.C. § 145, *et seq.*, and O.A.C. § 145-2-23.  *See Complaint*, ¶¶ 37 ("Pursuant to this contract, Defendant was required to act in accordance with O.R.C. § 145, O.A.C. § 145-2-23, and Defendant's adopted policies in resolving disputes regarding the termination of retirement benefits, the notice required when challenging termination of disability benefits, and the process of resolving disputes stemming from the termination of benefits."), 56 ("[OPERS owed a duty to] inform Plaintiffs of the true nature of [OPERS] payments and benefits" and to "establish proper procedures for resolving disputes that included fair adequate notice and opportunity to be heard."), 60 ("[OPERS] was aware of the need to provide persons such as Plaintiffs with a fair, impartial, and proper notice of their basic rights under OPERS, so as to safeguard and protect their rights and outline their responsibilities.").  OPERS argues that the state law claims should be dismissed for failure to state a claim because a writ of mandamus is the only means to challenge the disability retirement board's decision, OPERS is not subject to the doctrine of

23

equitable estoppel, and plaintiffs' claims are factually deficient. *Defendant's Motion*, pp. 16-19.

The arguments presented in *Plaintiffs' Response* are not entirely clear. Plaintiffs appear to argue that a writ of mandamus is not appropriate because the case also presents federal constitutional claims challenging the validity of the statute(s) upon which OPERS relies. *Id*. at 16. Plaintiffs also argue that Richard Mathews "should have been afforded a process to appeal and a board determination regarding the termination of his disability benefits" and that Richard Mathews was not provided the written notice required by O.A.C. § 145-2-23. *Id*. at 17. Plaintiffs' arguments are without merit.

First, plaintiffs improperly attempt to recast their federal due process claims as state law claims by arguing that the alleged federal procedural due process violation constitutes the basis for each state law claim. Second, the presence of federal claims does not change the nature of the state law claims. The state law claims, which challenge OPERS' decision to terminate Richard Mathews' disability benefits and to deny him service credit, are more appropriately addressed by an action for a writ of mandamus in state court. *See State ex rel. Cydrus v. Ohio Pub. Emps. Ret. Sys.*, 938 N.E.2d 1028, 1032 (Ohio 2010) ("The determination of whether [an OPERS] member is entitled to the continued receipt of disability-retirement benefits is within the exclusive authority of the retirement board, R.C. 145.362, and the board's denial of an appeal from the termination of these benefits is final and not subject to appeal. . . . Because there is no right to

24

appeal the retirement board's decision terminating disability-retirement benefits, mandamus is an appropriate remedy.") (citing *State ex rel. Pontillo v. Pub. Emps. Ret. Sys. Bd.*, 787 N.E.2d 643 (Ohio 2003); *State ex rel. Morgan v. State Teachers Ret. Bd.*, 904 N.E.2d 506 (Ohio 2009)); *State ex rel. Hulls v. State Teachers Ret. Bd. of Ohio*, 866 N.E.2d 483, 488 (Ohio 2007) ("[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body.") (citations and quotations omitted). Accordingly, the *Complaint* does not contain factual allegations sufficient to a state a colorable state law claim.

**WHEREFORE**, based on the foregoing, *Ohio Public Employees Retirement System's Motion to Dismiss*, Doc. No. 4, is **GRANTED** in part and **DENIED** in part. Plaintiff Richard Mathews' Fourteenth Amendment procedural due process claim (count II) may proceed. All other claims, including all claims asserted by plaintiff Sandra Mathews, are **DISMISSED** for failure to state a claim upon which relief can be granted.

September 20, 2013                    _____*s/Norah McCann King*_____
                                       Norah M<sup>c</sup>Cann King
                                  United States Magistrate Judge