IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD MATHEWS, *et al.,*

           **Plaintiffs,**

    **vs.**                            **Civil Action 2:12-cv-1033**
                                        **Magistrate Judge King**

OHIO PUBLIC EMPLOYEES RETIREMENT
SYSTEM,

           **Defendant.**

## OPINION AND ORDER

    This action arises out of the termination of the disability retirement benefits of plaintiff Richard Mathews. This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of two motions. Plaintiff[1] filed a motion for judgment on the pleadings on February 27, 2014. *Motion for Judgment on the Pleadings* ("*Plaintiff's Motion*"), ECF 26. Defendant Ohio Public Employees Retirement System ("OPERS" or defendant) opposed that motion and also moved for summary judgment. *Defendant's Motion*, ECF 32. Plaintiff filed a joint response to *Defendant's Motion* and a renewed request for judgment on the pleadings, *Plaintiff's Response*, ECF 36, and defendant filed a reply, *Defendant's Reply*, ECF 37. Because the parties relied on evidence outside the pleadings in briefing *Plaintiff's Motion*, the Court advised the parties that *Plaintiff's Motion* would be treated as a motion for summary judgment and ordered the parties to supplement their briefing. *Opinion and*

---

[1] Plaintiff Richard Mathews and his wife, Sandra Mathews, filed this action on November 8, 2012, asserting eight claims based on the termination of plaintiff Richard Mathews' disability retirement benefits. *Complaint*, ECF 2. Upon defendant's motion, ECF 4, Mrs. Mathews' claims were dismissed. *Opinion and Order*, ECF 14. Unless otherwise specified, all references to "plaintiff" are to Richard Mathews.

*Order*, ECF 38. The parties have supplemented their briefing. *Plaintiff's Supplemental Brief*, ECF 41; *Defendant's Supplemental Brief*, ECF 42. This matter is now ripe for consideration.

## I.  Background

The facts of this case are not in dispute. Plaintiff served as a police officer from 1969 until 1996, when he suffered a debilitating medical condition. *Amended Complaint*, ECF 23, ¶¶ 9-10. Plaintiff is a member of OPERS and began receiving disability benefits from OPERS on April 1, 1997. *Ohio Public Employees Retirement System's Answer to the Amended Complaint and Counterclaim* ("*Amended Answer*"), ECF 39, ¶¶ 2, 13.

Between 2000 and 2003, plaintiff reported to OPERS on several occasions that he was employed on a part-time or full-time basis, and OPERS continued to pay disability benefits. *Amended Complaint*, ¶¶ 16-18; *Amended Answer*, ¶¶ 16-18; *PAGEID* 681-87, 733-37, 745-47, 750-52. In March 2001, plaintiff sought guidance from defendant about whether he could hold a public office and still receive OPERS disability benefits. *Administrative Record*, ECF 31, *PAGEID* 676. In a letter dated March 27, 2001, defendant responded as follows: "If a disability retirant should return to public service with a department, which is covered under the Public Employees Retirement System, we are required to suspend the disability benefits. A disability retiree may not be employed in any capacity for a PERS reporting employer." *Id.* at *PAGEID* 675. The letter also states that plaintiff might, under certain circumstances, be employed by a private employer without jeopardizing his OPERS disability benefits. *Id.* However, plaintiff

avers that he never received this letter. *Affidavit of Richard Mathews*, ECF 36-3, ¶¶ 5-7.

In November 2009, plaintiff was elected to serve as a Council Person for the Village Council in the Village of New Richmond, Ohio, for the term January 2010 to December 2013. *Amended Complaint*, ¶ 20; *Amended Answer*, ¶ 20. Plaintiff alleges that, prior to embarking on service in this position, he conferred with the Village Administrator for the Village of New Richmond "and was assured that [he] could pay into Social Security, according to applicable R.C. § 144.05, as an elected official and would not be required to contribute to OPERS." *Amended Complaint*, ¶ 21. Plaintiff does not argue that the Village Administrator for the Village of New Richmond is an agent of OPERS, and he does not contest defendant's representation that the Village Administrator is not an agent of OPERS. *See Defendant's Motion*, *PAGEID* 793-95. Plaintiff assumed office as a Council Person on January 1, 2010. *Affidavit of Richard Mathews*, ¶ 11.

In March 2011 and March 2012, plaintiff filed an annual report of earnings with OPERS showing his earned income as an elected official for the Village of New Richmond. *Amended Complaint*, ¶¶ 23-24; *Amended Answer*, ¶¶ 23-24; *Administrative Record*, *PAGEID* 413-16. On March 20, 2012, OPERS notified plaintiff by telephone that his disability benefits would be terminated effective April 30, 2012, because of his election to and service for the New Richmond Village Council. *Amended Complaint*, ¶ 26; *Amended Answer*, ¶ 26; *Administrative Record*, *PAGEID* 272-73; *Affidavit of Richard Mathews*, ¶ 15. An OPERS representative spoke with plaintiff or plaintiff's counsel on the telephone at least

3

six times between March 21 and April 30, 2012, regarding the termination of plaintiff's disability benefits. *Affidavit of Jeremy Polley*, ECF 32-2, ¶ 9; *Affidavit of Allen Foster*, ECF 32-1, ¶¶ 3, 9, Exhibits A, G.  However, plaintiff did not receive written notice that his disability benefits would be terminated, *Affidavit of Richard Mathews*, ¶ 16, and he did not receive written notice regarding the availability of any procedure to appeal the termination of his disability benefits. *Amended Answer*, ¶ 37.  Defendant "admits that it never provided Richard Mathews a formal opportunity to appeal the termination of his disability benefits." *Id.* at ¶ 32.

Plaintiff applied for traditional pension plan retirement benefits on April 2, 2012. *Administrative Record*, *PAGEID* 369-65. Plaintiff's disability benefits were terminated on April 30, 2012, *Amended Answer*, ¶ 2, and his traditional age and service retirement benefits became effective May 1, 2012.[2] *Amended Complaint*, ¶ 27; *Affidavit of Jeremy Polley*, ¶¶ 7-8.

## II.  Standard

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary

---

[2] The transition from disability benefits to age and service retirement benefits had significant consequences. Plaintiff elected to contribute to Social Security, rather than to OPERS, in January 2010 when he began work as a Council Person for the Village of New Richmond. *Amended Complaint*, ¶ 31. Had plaintiff contributed to OPERS, he would likely have been entitled, after two (2) years, to full service credit for the period during which he received disability benefits. *See Defendant's Motion*, *PAGEID* 794-95.  A March 2012 projection of plaintiff's retirement benefits estimated that plaintiff would be entitled to a monthly retirement benefit of $3,088.99 had he received that service credit and to $1,640.22 had he not. *See Affidavit of Allen Foster*, ¶¶ 6-7, 26, Exhibits E, D, X.  Plaintiff did not receive the service credit. Moreover, plaintiff must now pay for health insurance for himself and his wife. *Plaintiff's Response*, p. 28.

4

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting

Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III. Discussion

The *Amended Complaint* asserts procedural due process claims under the Fourteenth Amendment to the United States Constitution and alleges that O.R.C. § 145.362 is unconstitutional on its face and as applied. Count II of the *Amended Complaint* alleges that plaintiff received inadequate notice that his disability benefits would be terminated and that "[t]here was a complete absence of written notice to Plaintiff[] of any procedure available to appeal Defendant's termination of Plaintiff['s] disability retirement and other benefits." *Amended Complaint*, ¶ 42. Defendant's alleged failure to provide written notice and opportunity to be heard "caus[ed] damage to Plaintiff[] in the form of the loss of Plaintiffs [sic] disability retirement and other benefits from May 2012, forward." *Id*. at ¶ 43. Count IX of the *Amended Complaint* alleges that O.R.C. § 145.362 is unconstitutional on its face because it provides for the termination of disability benefits when a "disability recipient is restored to service by, or elected to an elective office with, an employer covered by [OPERS]" without "adequate notice and opportunity to be heard before the recipient's disability benefit shall cease." *Amended Complaint*, ¶ 71 (emphasis and internal quotations omitted). Plaintiff alleges that

the lack of process afforded in O.R.C. § 145.362 has caused "the loss of full retirement benefits and other benefits from May 2012, forward." *Amended Complaint*, ¶ 73.  Plaintiff seeks an order declaring O.R.C. § 145.362 unconstitutional on its face and as applied.  *Amended Complaint*, ¶ 72.

The standards governing facial challenges are different from those governing as-applied challenges.

> A court may hold a statute unconstitutional either because it is invalid "on its face" or because it is unconstitutional "as applied" to a particular set of circumstances.  Each holding carries an important difference in terms of outcome: If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances.  Traditionally, a plaintiff's burden in an as-applied challenge is different from that in a facial challenge.  In an as-applied challenge, "the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Ada v. Guam Soc'y of Obstetricians and Gynecologists,* 506 U.S. 1011, 1012, 113 S.Ct. 633, 634, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting), *denying cert. to* 962 F.2d 1366 (9th Cir. 1992).  Therefore, the constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation.  In comparison, the Court explained in *Salerno* that

> > [a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.  The fact that [an Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.

> 481 U.S. at 745, 107 S.Ct. at 2100.  In other words, a facial challenge to a statute should fail if the statute has a constitutional application.

7

*Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193-94 (6th Cir. 1997)(citing *United States v. Salerno*, 481 U.S. 739 (1987)).  Courts tend to disfavor facial challenges.  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  It is therefore customary for courts to "address an as-applied challenge before a facial challenge because it generally will be more 'efficient,' because this sequencing decreases the odds that facial attacks will be addressed 'unnecessarily' and because this approach avoids encouraging 'gratuitous wholesale attacks upon state and federal laws.'" *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 327-28 (6th Cir. 2009) (quoting *Bd. of Trs. of the State Univ. of N.Y. v. Fox,* 492 U.S. 469, 484-85 (1989)).

This Court will therefore begin by addressing plaintiff's as-applied challenge.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "provides that certain substantive rights — life, liberty, and property — cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  In order to establish a procedural due process claim, a plaintiff must show that: (1) he possess an interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) the state deprived him of that interest, and (3) "the state did not afford [him] adequate procedural rights prior to" that deprivation.  *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)).

Whether there exists a constitutionally protected interest is the threshold determination in any procedural due process claim. *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996). Whether a person possesses a constitutionally protected property interest is traditionally a question of state law. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "The due process clause protects only those interests to which one has a 'legitimate claim of entitlement.'" *600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 588 (6th Cir. 2013) (quoting *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)). "A statute creates a protected property interest when it 'both confers [a] benefit and limits the discretion of the [government] to rescind the benefit.'" *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 709 F.3d 584, 594 (6th Cir. 2013) (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir. 2002)).

The parties disagree whether plaintiff possessed a constitutionally protected property interest in continued disability benefits after he became an elected official. Plaintiff argues that a legitimate, continuing claim of entitlement to disability benefits was established when he was approved for disability benefits. *Plaintiff's*

9

*Response*, p. 11. Defendant argues that, "[p]ursuant to O.R.C. §
145.362, Mathews does not have a protected property interest in
receiving disability benefits *while serving as* an elected official."
*Defendant's Motion*, *PAGEID* 808 (emphasis in original). The Court
previously addressed these arguments and concluded as follows:

> OPERS provides disability coverage to its members and pays
> benefits upon the determination by its retirement board
> that a member qualifies for a disability benefit. *See*
> O.R.C. § 145.35. The government cannot thereafter suspend
> or terminate disability benefits without complying with §
> 145.362. A legitimate claim of entitlement to OPERS
> disability benefits is therefore established by the award
> of benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 332
> (1976) ("[T]he interest of an individual in continued
> receipt of [Social Security disability benefits] is a
> statutorily created 'property' interest protected by the
> Fifth Amendment."); *Am. Premier Underwriters, Inc.*, 2013 WL
> 791410 at *10 ("Grants of . . . disability benefits . . .
> have [] sufficed to meet the 'benefit conferral'
> requirement."); *EJS Props., LLC v. City of Toledo*, 698 F.3d
> 845, 856-57 (6th Cir. 2012) (there is no property interest
> if the government has the discretion to rescind the benefit
> entirely).

*Opinion and Order*, ECF 14, p. 10. Defendant disagrees with that
conclusion and argues "that the Court's previous examination was at
too general a level." *Defendant's Motion*, *PAGEID* 808. According to
defendant, O.R.C. § 145.362 does not limit defendant's "discretion to
rescind or terminate Mathews' disability benefits, but plainly
provides that Mathews is no longer eligible for disability benefits."
*Id*. at p. 27. "[A] prerequisite for Mathews' continued receipt of
disability benefits," defendant argues, "is that he not return to
public service as an elected official. Having done so, Mathews does
not have a legitimate claim of entitlement to continued disability
benefits." *Id*. (emphasis omitted). Defendant cites to *Banks v.
Block*, 700 F.2d 292 (6th Cir. 1983), and argues that "the property

interest conferred by O.R.C. 145.362 is limited in nature."
*Defendant's Motion*, *PAGEID* 809.

The plaintiffs in *Banks* asserted due process claims under the
Fifth and Fourteenth Amendments because their food stamps had been
terminated prior to a "fair hearing." *Banks*, 700 F.2d at 293-95. The
United States Court of Appeals for the Sixth Circuit noted that food
stamps were awarded for a predetermined certification period, that
benefits automatically ceased at the end of the period, and that
people seeking re-certification were treated like first-time
applicants. *Id.* at 295. The Court of Appeals also cited legislative
history noting that the food stamp program "is not a program of
permanent or continuing eligibility subject to periodic review," but
rather, "is a program of distinct and separate entitlements known as
certification periods, which limit participation in the program." *Id.*
at 297. The court held that food-stamp recipients therefore are
possessed of a limited property interest "for one certification period
and one certification period only." *Id.*

This Court concludes that *Banks* is inapposite. Unlike the
plaintiffs in *Banks*, recipients of OPERS disability benefits are not
awarded benefits for a uniform, predetermined period of time.
Although OPERS disability benefits recipients are required to undergo
an annual medical examination, *see* O.R.C. § 145.362, benefits are not
awarded in one year increments and the process of undergoing an annual
medical examination is not tantamount to reapplying for disability
benefits. Accordingly, unlike the food stamp program at issue in
*Banks*, OPERS' disability system is a program of continuing eligibility

11

subject to periodic review. *Cf. Banks*, 700 F.2d at 297 ("The food stamp program is not a program of permanent or continuing eligibility subject to periodic review."). Accordingly, this Court rejects defendant's renewed argument that the OPERS disability benefits program confers only a limited property interest in disability benefits subject to the recipient not returning to public service; this Court instead reaffirms its earlier holding that a legitimate claim of entitlement to continuing OPERS disability benefits is established by the award of benefits.

Having determined that plaintiff is possessed of a constitutionally protected property interest in his continued disability benefits, the Court must now determine exactly what procedures are due in connection with the protection of that interest. In making this determination, the Court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. "The United States Supreme Court has consistently held that some form of a hearing is required prior to an individual being finally deprived of a property interest." *Chernin v. Welchans*, 844 F.2d 322, 325 (6th Cir. 1988) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974)). "The requisite hearing must be 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

12

Plaintiff was elected to serve as a Council Person for the
Village of New Richmond, Ohio, and took office on January 1, 2010.
*Amended Complaint*, ¶ 20; *Affidavit of Richard Mathews*, ¶ 11.
Plaintiff filed an annual report with OPERS in March 2011 and March
2012, showing earned income as an elected official for the Village of
New Richmond.  *Amended Complaint*, ¶¶ 23-24; *Amended Answer*, ¶¶ 23-24;
*Administrative Record*, *PAGEID* 413-16.  On March 20, 2012, OPERS
notified plaintiff by telephone that his disability benefits would be
terminated effective April 30, 2012, because of his election to and
service for the New Richmond Village Council.  *Amended Complaint*, ¶
26; *Amended Answer*, ¶ 26; *Administrative Record*, *PAGEID* 272-73;
*Affidavit of Richard Mathews*, ¶ 15.  An OPERS representative spoke
with plaintiff or his counsel on the telephone at least six times
between March 21 and April 30, 2012, regarding the termination of
plaintiff's disability benefits.  *Affidavit of Jeremy Polley*, ECF 32-
2, ¶ 9; *Affidavit of Allen Foster*, ECF 32-1, ¶¶ 3, 9, Exhibits A, G.

Section 145.362 of the Ohio Revised Code provides that a
"recipient's disability benefit shall cease" if the "disability
benefit recipient is restored to service by, or elected to an elective
office with, an employer covered by [OPERS]."  O.R.C. § 145.362.
OPERS' board has been granted the authority to adopt rules for the
proper administration and management of the public employees
retirement system.  O.R.C. § 145.09.  The parties agree, however, that
the procedures for providing written notice upon the termination of
disability benefits and to appeal a decision terminating disability
benefits do not apply where, as here, benefits were terminated as the

result of the election of a disability benefit recipient to an elective office covered by OPERS. *Defendant's Motion*, *PAGEID* 810-13; *Plaintiff's Response*, pp. 14-25. *See also* O.R.C. § 145.362. Moreover, defendant concedes that there is no "formal appeal process in return to public service situations." *Defendant's Motion*, *PAGEID* 820. Defendant argues, however, that "nothing in O.R.C. 145.362 *prevents* such a process" and "there is nothing to prevent the OPERS board from enacting an administrative rule that provides additional process in 'return to public service' situations." *Defendant's Motion*, *PAGEID* 820 (emphasis in original). Defendant also argues that the availability of post-deprivation mandamus relief offered plaintiff an adequate opportunity to be heard. *Defendant's Motion*, *PAGEID* 807.

The parties have only briefly addressed the private and public interests presented by the issues in this case. Although defendant argues that plaintiff's interest in his disability benefits is less significant than other potential interests, defendant seems to concede that plaintiff has a substantial interest in continued disability benefits. *See Defendant's Motion*, *PAGEID* 803-04. Indeed, courts "have recognized the severity of depriving someone of the means of his livelihood, they have also emphasized that in determining what process is due, account must be taken of 'the *length*' and '*finality* of the deprivation.'" *Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (emphasis in original; internal citations omitted). Plaintiff's interest in the uninterrupted receipt of benefits is significant, and termination of plaintiff's benefits caused a permanent deprivation of that interest. The Court notes, however, that the risk of depriving someone of the

14

means of his livelihood is lessened in a "return to service" case, where disability benefits are terminated because the benefit recipient returned to work. Similarly, the government has a significant interest in avoiding overpayments to disability benefits recipients and in avoiding the administrative burdens of trying to recoup any overpayment of benefits. *See* O.R.C. § 145.563. The government also has an interest in avoiding the administrative burdens associated with holding a pre-deprivation hearing.

The parties disagree whether plaintiff was entitled to a pre-termination hearing. Defendant cites to *Codd v. Velger*, 429 U.S. 624 (1977), among other cases, and argues that "[p]rocedural due process does not require a pre-termination hearing if the plaintiff fails to allege any factual dispute or issue that could be served by a hearing. This is particularly true if the matter involves the straightforward application of a statute or rule." *Defendant's Motion*, *PAGEID* 800.

Plaintiff argues that *Codd* is inapplicable to the facts of this case because plaintiff "was not afforded any forum in which to dispute his claim." *Plaintiff's Response*, p. 15 (emphasis omitted). Plaintiff also notes that *Codd* involved a liberty interest, rather than a property interest, and merely established a due process framework in stigmatization cases where the aggrieved party is afforded an opportunity to clear his name. *Id.*

In *Codd,* the United States Supreme Court considered whether the government was required to hold a hearing for a probationary police officer before placing a "stigmatizing" report in the officer's personnel file indicating that he had attempted suicide by putting a

15

gun to his head. *Id.* at 626. The Supreme Court held that the officer's due process claim failed because he did not dispute the truth of the facts stated in the report. *Id.* at 627–28. In a stigma case, the Supreme Court explained, the Due Process Clause requires a hearing only to provide an opportunity for the public employee to clear his or her name. *Id.* at 627. The government was therefore not required to hold a hearing when the employee did not dispute the truth of the allegedly stigmatizing statement. *Id.* at 627–28. The Supreme Court distinguished this type of single-purpose factual hearing from a parole revocation hearing, which has two purposes: to adjudicate facts and to determine whether, on the basis of those facts, a certain consequence should follow. *See id.* at 627 (citing *Morrissey v. Brewer,* 408 U.S. 471, 479–80 (1972)). In a parole revocation hearing, "[t]he fact that there was no dispute with respect to the commission of the act would not necessarily obviate the need for a hearing on the issue of whether the commission of the act warranted the revocation of parole." *Id.* "*Codd* thus makes clear that the Due Process Clause may require a hearing when there is no factual dispute if the decision-maker has discretion to determine the consequences of the undisputed facts." *Anderson v. Recore*, 446 F.3d 324, 331 (2d Cir. 2006).

Although plaintiff "cannot speculate what form of hearing he seeks," *Plaintiff's Supplemental Brief*, p. 9 (internal quotations omitted), the facts of this case do not lend themselves to more than a single-purpose factual hearing. Plaintiff's disability benefits were terminated pursuant to O.R.C. § 145.362, which provides: "If a disability benefit recipient is restored to service by, or elected to

16

an elective office with, an employer covered by [OPERS], the recipient's disability benefit shall cease." Plaintiff does not dispute, nor has he ever disputed, that he was an OPERS disability benefits recipient or that he was elected to an elective office with an employer covered by OPERS. In fact, the termination of plaintiff's disability benefits was predicated on his report of this information to OPERS. Under these circumstances, Ohio law required the termination of plaintiff's disability benefits and OPERS had no discretion to do otherwise. *See* O.R.C. § 145.362; O.A.C. § 145-2-23 ("The termination of a disability benefit due to the disability benefit recipient being restored to service as provided in section 145.362 of the Revised Code and rule 145-2-22 of the Administrative Code is not subject to the discretion of nor appeal to the retirement board."). As was the case in *Codd*, no pre-determination hearing was necessary because there were no factual disputes and OPERS had no discretion in determining the consequences of those undisputed facts. *See Codd*, 429 U.S. at 627-28. Under these circumstances, there was little risk of erroneous deprivation and the probable value of additional or substitute procedural safeguards would have been negligible. *See Gilbert*, 520 U.S. at 933 (suggesting that there would be no need for any pre-suspension process where suspension was mandatory upon being charged with a felony, and "there would be nothing to consider at the hearing except the independently verifiable fact of whether an employee had indeed been formally charged with a felony").

The facts of this case are also analogous to those presented in the Third Circuit's recent decision in *Loscombe v. City of Scranton*, ___ Fed. App'x ____, No. 13-4579, 2015 WL 348055 (3d Cir. Jan. 28, 2015). The plaintiff in *Loscombe,* a fire captain, received a disability retirement pension from the City of Scranton after he was forced to retire due to injuries sustained in a work-related accident. *Id*. at *1. When the plaintiff subsequently accepted an offer to serve as a member of the Scranton City Council, his pension was automatically suspended in accordance with a city ordinance that provided: "When any fireman is pensioned and thereafter enters the service of the City in any capacity with compensation the pension of such person shall be suspended during his term of service. Upon termination of such compensated service the pension payments shall be resumed on request of the pensioner." *Id*. The plaintiff filed suit, claiming, *inter alia*, that the failure to provide a pre-suspension hearing violated the Fourteenth Amendment Due Process Clause. The Third Circuit assumed, for purposes of argument, that the plaintiff was possessed of a property right in his disability pension benefits, but nevertheless affirmed the district court's dismissal of the due process claims and concluded that a pre-suspension hearing was not constitutionally required:

> We have concluded on prior occasions that "a pre-termination hearing was not required when there was no underlying factual dispute to be hashed out in the hearing." *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000) (citing *Codd v. Velger,* 429 U.S. 624, 627–28 (1977)). Given that the suspension of Appellant's pension was based on the Appellees' statutory reading and there was no factual dispute to resolve, Appellant cannot demonstrate a violation of his procedural due process rights due to a lack of a hearing.

18

*Loscombe*, 2015 WL 348055 at *4. This Court finds *Loscombe* persuasive. As discussed *supra*, there is no factual dispute about whether plaintiff was elected to an elective office with an employer covered by OPERS, and OPERS had no discretion in applying O.R.C. § 145.362 to the undisputed facts. Accordingly, when balancing the factors, this Court concludes that defendant was not required to provide a pre-deprivation hearing in this case.

As to the post-deprivation process afforded plaintiff, defendant concedes that there is no "formal appeal process in return to public service situations," *Defendant's Motion*, *PAGEID* 820, and defendant "admits that it never provided Richard Mathews a formal opportunity to appeal the termination of his disability benefits." *Amended Answer*, ¶ 32. The parties agree that there is no administrative process to appeal a decision terminating benefits in a return to service case. The parties also agree that plaintiff could have filed a mandamus proceeding in state court to challenge the termination of his disability benefits. However, the parties disagree whether a state court mandamus proceeding provides plaintiff an adequate opportunity to be heard.

"Mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Cydrus v. Ohio Pub. Emps. Ret. Sys.*, 127 Ohio St. 3d 257, 260 (2010) (alteration and internal quotations omitted). "The termination of a disability benefit due to the disability benefit recipient being restored to service as provided in section 145.362 of the Revised Code and rule 145-2-22 of the

19

Administrative Code is not subject to the discretion of nor appeal to the retirement board." O.A.C. § 145-2-23. "Because there is no right to appeal . . . , mandamus is an appropriate remedy." *State ex rel. Cydrus*, 127 Ohio St. 3d at 260. *See also State ex rel. Lowe v. Ohio Pub. Emps. Ret. Sys.*, No. 13AP-627, 2014 WL 5460448 (Ohio Ct. App. Oct. 28, 2014).

Plaintiff argues "that a state court mandamus action does not and cannot constitute a proper post-deprivation hearing as success derived from such an action would leave Mathews in exactly the same position he currently stands." *Plaintiff's Supplemental Brief*, p. 8. Plaintiff argues that a "mandamus action would not cure the underlying unconstitutionality of [O.R.C. § 145.362]" because the statute "is devoid of any provisions for Due Process when terminating a recipient's disability benefits." *Id*. at p. 7. Plaintiff's arguments are not well taken.

As noted *supra*, Ohio law offers mandamus as "an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Cydrus*, 127 Ohio St. 3d at 260. *Accord State ex rel. Pipoly v. State Teachers Ret. Sys.*, 95 Ohio St. 3d 327, 330 (2002) (citing *State ex rel. Alben v. State Emp. Relations Bd.*, 76 Ohio St. 3d 133, 135 (1996)). In this context, "[t]he term 'abuse of discretion' means an unreasonable, arbitrary, or unconscionable decision." *Id*. (quoting *State ex rel. Elsass v. Shelby Cnty. Bd. of Commrs.*, 92 Ohio St. 3d 529, 533 (2001)). Plaintiff could have filed a mandamus action to challenge the termination of his disability benefits. *See State ex rel. Garrett*

20

*v. Ohio Pub. Emps. Ret. Sys.*, No. 11AP-1020, 2012 WL 4502951 (Ohio Ct. App. Sept. 28, 2012).  If defendant's determination that plaintiff had been elected to an elective office with an employer covered by OPERS were determined to be incorrect or unreasonable, then plaintiff's disability benefits could have been reinstated through that proceeding.  *See* O.R.C. § 2731.01 ("Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.").  Plaintiff therefore had an adequate state remedy to redress the termination of his disability benefits.  The fact that plaintiff very likely would not have prevailed in a mandamus action, *see e.g.*, *Plaintiff's Motion*, *PAGEID* 237 ("[M]andamus (state court) would constitute a folly because under such pursuit the state court would simply be asked to enforce the statute as written . . . ."), has no bearing on whether a mandamus action is an adequate state remedy for the redress of his alleged wrong.  *See Jackson v. City of Columbus*, 194 F.3d 737, 751 (6th Cir. 1999) (affirming the district court's dismissal of procedural due process claims because a mandamus action was an adequate state remedy) *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The parties also disagree whether the notice provided by defendant comports with the requirements of due process.  The *Amended Complaint* alleges that plaintiff received inadequate notice that his disability benefits would be terminated and that "[t]here was a complete absence of written notice to Plaintiffs of any procedure

available to appeal Defendant's termination of Plaintiff's disability retirement and other benefits." *Amended Complaint*, ¶ 42. Plaintiff previously argued that defendant's alleged failure in this regard was in violation of O.A.C. § 145-2-23. *Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss*, ECF 8, *PAGEID* 56, 64; *Plaintiff's Motion*, *PAGEID* 235. Plaintiff now concedes that the procedures in O.A.C. § 145-2-23 for providing written notice upon the termination of disability benefits and to appeal a decision terminating disability benefits do not apply where, as here, benefits are terminated due to the disability benefit recipient being restored to service by, or elected to an elective office with, an employer covered by OPERS. *Defendant's Motion*, *PAGEID* 810-13. Plaintiff argues that he did not receive adequate notice that his disability benefits would be terminated because "OPERS did not provide Mathews with: (1) adequate notice of any impending deprivation of a secured property interest, and (2) nor did OPERS' communication to Mathews provide adequate notice of any pre-deprivation or post-deprivation hearing as required under the Fourteenth Amendment." *Plaintiff's Supplemental Brief*, pp. 4-5.

"[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339

U.S. 306, 314 (1950)). "A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." *City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999) (citing *Mullane*, 339 U.S. at 314). Plaintiff's challenge to the notice provided by OPERS is two-fold: plaintiff argues that he did not receive adequate notice that his disability benefits would be terminated, and he argues that OPERS was required to provide notice of an available state remedy to challenge the termination.

The parties agree that OPERS notified plaintiff by telephone on March 20, 2012, that his disability benefits would be terminated effective April 30, 2012, because of his election to and service for the New Richmond Village Council. *Amended Complaint*, ¶ 26; *Amended Answer*, ¶ 26; *Administrative Record*, *PAGEID* 272-73; *Affidavit of Richard Mathews*, ¶ 15. An OPERS representative spoke with plaintiff or plaintiff's counsel on the telephone at least six times between March 21 and April 30, 2012, regarding the termination of plaintiff's disability benefits. *Affidavit of Jeremy Polley*, ¶ 9; *Affidavit of Allen Foster*, ECF 32-1, ¶¶ 3, 9, Exhibits A, G. Plaintiff was informed that his disability benefits would be terminated on a particular date and he was informed of the reason why his benefits would be terminated. *See Affidavit of Jeremy Polley*, ¶ 9; *Affidavit of Allen Foster*, ECF 32-1, ¶¶ 3, 9, Exhibits A, G; *Amended Complaint*, ¶ 26. Under the circumstances of this case, the Court concludes that the oral notice provided by OPERS complied with the requirements of due process.

23

As to plaintiff's complaint that defendant's communications failed to provide adequate notice of an opportunity to be heard, the Court concludes that OPERS was not required to provide notice of the availability of a mandamus action as a vehicle for challenging the termination of plaintiff's disability benefits.  In *City of W. Covina v. Perkins,* 525 U.S. 234 (1999), West Covina police officers, acting pursuant to a valid state court search warrant, seized personal property from the home of Lawrence Perkins.  The property belonged, not to the suspected criminal who was a boarder in the home, but to Perkins and his family.  The officers left an itemized list of the property seized and notice that further information could be obtained from any of the specified officers.  When Perkins called one of the listed officers and asked about the return of the seized property, the officer informed him that the property could be returned only upon court order.  After attempting, unsuccessfully, to obtain such an order, the Perkins family filed suit in federal court alleging that their due process rights had been violated because the officers did not adequately notify them of the specific procedures necessary for the return of their seized property.

The Court of Appeals for the Ninth Circuit, relying on *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), held that the city was constitutionally required to provide specific notice of the particular state procedures to be followed by persons seeking the return of seized property as well as sufficient information to permit those persons to properly invoke those procedures.  The United States Supreme Court reversed that decision:

> Individualized notice that the officers have taken the property is necessary in a case such as the one before us because the property owner would have no other reasonable means of ascertaining who was responsible for his loss.
>
> No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.

*City of W. Covina*, 525 U.S. at 241 (citing *Atkins v. Parker,* 472 U.S. 115 (1985); *Reetz v. Michigan,* 188 U.S. 505, 509 (1903)). The Supreme Court also distinguished its holding in *Memphis Light:*

> In requiring notice of the administrative procedures, however, we relied not on any general principle that the government must provide notice of the procedures for protecting one's property interests but on the fact that the administrative procedures at issue were not described in any publicly available document. A customer who was informed that the utility planned to terminate his service could not reasonably be expected to educate himself about the procedures available to protect his interests[.]

*Id.* at 241-42. The Supreme Court therefore concluded that "[w]hile *Memphis Light* demonstrates that notice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public, it does not support a general rule that notice of remedies and procedures is required." *Id.* at 242.

Here, the right to file a mandamus action is grounded in a state statute, O.R.C. § 2731.01, and is well established in case law. *See, e.g., State ex rel. Cydrus*, 127 Ohio St. 3d at 260-61; *State ex rel. Lowe*, 2014 WL 5460448. OPERS was therefore not required to provide individualized notice of the availability of a mandamus action

25

because, once plaintiff was informed that his disability benefits would be terminated, he could turn to the state statute and case law to learn about and pursue the remedial procedures available to him. *See City of W. Covina*, 525 U.S. at 241.  OPERS therefore was not constitutionally required to provide written notice of the availability of a mandamus action.

In short, the Court concludes that the process afforded plaintiff was adequate under the circumstances to protect plaintiff's property interest in his disability benefits.  Defendant is therefore entitled to summary judgment on plaintiff's as-applied procedural due process claim.

Plaintiff also alleges that O.R.C. § 145.362 is unconstitutional on its face.  Plaintiff specifically argues that O.R.C. § 145.362 is unconstitutional because the statute does not expressly provide "any legally sufficient Due Process protections." *Plaintiff's Supplemental Brief*, p. 1.  Defendant reasserts the arguments made in opposition to plaintiff's as-applied challenge and argues, further, that plaintiff lacks standing to assert a facial challenge to O.R.C. § 145.362, that plaintiff's facial challenge is not ripe for resolution, and that plaintiff's challenge is in any event moot. *Defendant's Motion*, *PAGEID* 818-19; *Defendant's Supplemental Brief*, *PAGEID* 1061-62*.*

As discussed *supra*, a plaintiff can succeed in a facial challenge only by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.,* that the law is unconstitutional in all its applications. *Salerno,* 481 U.S. at 745. *See also Wash. State Grange*, 552 U.S. at 449.  Because O.R.C. § 145.362 is not

26

unconstitutional as applied to plaintiff, it cannot be said that the law is facially unconstitutional. Defendant is therefore entitled to summary judgment on plaintiff's facial challenge to O.R.C. § 145.362. *See Women's Med. Prof'l Corp.*, 130 F.3d at 193-94 ("[A] facial challenge to a statute should fail if the statute has a constitutional application.").

Defendant also seeks summary judgment on its counterclaim for recovery of allegedly overpaid benefits and for declaratory judgment. Defendant specifically alleges that plaintiff improperly received $106,672.54 in disability benefits since January 1, 2010, when plaintiff took office as a Council Person for the Village of New Richmond, Ohio. *Amended Answer*, *PAGEID* 1028-1030. According to defendant, plaintiff's disability benefits terminated as a matter of law on January 1, 2010, pursuant to O.R.C. § 145.362, and O.R.C. § 145.563 requires that plaintiff repay the benefits received by him after that date. *Amended Answer*, *PAGEID* 1028-1030. Defendant therefore seeks $106,672.54 for the overpayment of benefits and a declaratory judgment that O.R.C. § 145.563 permits defendant to "set-off the overpayment and reduce Mathews' monthly retirement benefit, up to and including the full amount of the monthly benefit, until the entire overpayment amount of $106,672.54 has been recouped." *Id.*

Plaintiff argues that "OPERS is not entitled to summary judgment in its favor as genuine issues of material fact exists [sic] as to when Mathews' benefits should have been terminated, if at all." *Plaintiff's Response*, *PAGEID* 938. Observing that he notified OPERS in March 2010, 2011, and 2012 that he had become an elected official and

27

that OPERS nevertheless continued to pay benefits until April 2012, *id.* at *PAGEID* 939, plaintiff characterizes the continued payment of benefits after that notice as a ratification by OPERS of plaintiff's entitlement to disability benefits. Under these circumstances, plaintiff argues, OPERS is now estopped from recouping the alleged overpayments. *Id.*

Section 145.362 of the Ohio Revised Code provides: "If a disability benefit recipient is restored to service by, or elected to an elective office with, an employer covered by [OPERS], the recipient's disability benefit shall cease." Section 145.563 provides that, "[i]f any person . . . is paid any benefit or payment by the public employees retirement system, including any payment made to a third party on the person's behalf, to which the person is not entitled, the benefit or payment shall be repaid to the retirement system by the person or third party." O.R.C. § 145.563. "If the person or third party fails to make the repayment, the retirement system shall withhold the amount or a portion of the amount due from any benefit or payment due the person or the person's beneficiary under this chapter, or may collect the amount in any other manner provided by law." *Id.*

As discussed *supra*, plaintiff assumed office as an elective official with an employer covered by OPERS on January 1, 2010. Although plaintiff disagrees that O.R.C. § 145.362 requires the termination of an individual's disability benefits at the time he takes office as an elected official with an employer covered by OPERS, plaintiff has not offered any alternative interpretation of O.R.C. §

28

145.362.  Instead, plaintiff appears to argue that OPERS is now estopped from enforcing O.R.C. § 145.362 because OPERS continued to pay disability benefits to plaintiff until April 30, 2012. *Plaintiff's Response*, *PAGEID* 938-939.

Defendant does not dispute that plaintiff reported to OPERS in March 2011 and 2012 that he earned income as an elected official for the Village of New Richmond, *Amended Complaint*, ¶¶ 23-24; *Amended Answer*, ¶¶ 23-24; *Administrative Record*, *PAGEID* 413-16; *Affidavit of Richard Mathews*, ¶ 9, or that OPERS continued to pay plaintiff disability benefits until April 30, 2012, despite those reports. Defendant insists, however, that those facts do not give rise to an estoppel.  This Court agrees.

"The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.  It is available only in defense of a legal or equitable right or claim made in good faith and should not be used to uphold crime, fraud, or injustice."  *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St. 3d 143, 145 (1990) (citing *Heckler v. Cmty. Health Servs. of Crawford Cnty. Inc.*, 467 U.S. 51, 59 (1984); *Lex Mayers Chevrolet Co. v. Buckeye Finance Co.*, 153 N.E.2d 454, 456 (Ohio Ct. App. 1958)).  "The party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading."  *Id.* (citing *Heckler,* 467 U.S. at 59).  "It is well-settled that, as a general rule, the principle of estoppel does not

29

apply against a state or its agencies in the exercise of a governmental function." *Id.* (citing *Sekerak v. Fairhill Mental Health Ctr.*, 25 Ohio St. 3d 38, 39 (1986); *Besl Corp. v. Pub. Util. Comm.*, 45 Ohio St. 2d 146, 150 (1976)).

Plaintiff recognizes the general rule that "the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function," but he argues that the general rule does not apply in this case because the plaintiff in *Frantz* did not assert a claim for procedural due process. *Plaintiff's Supplemental Brief*, *PAGEID* 1040. Plaintiff's argument is not well taken. Notably, plaintiff has offered no support for his suggestion that the general rule does not apply in this case. Indeed, this Court has previously held that OPERS is not subject to an estoppel defense, particularly where, as here, OPERS made no representation that induced the plaintiff to take action. *Evans v. Ohio Pub. Emp. Ret. Sys.*, No. 2:07-CV-1061, 2008 WL 4849119, at *6 (S.D. Ohio Nov. 6, 2008). Here, plaintiff has offered no evidence that he reasonably relied to his detriment on OPERS' actions, inactions, or representations. Plaintiff argues that "the amount of time which passed from the date Mathews first advised OPERS (by letter dated March[] 29, 2010) and the date OPERS unilaterally terminated Plaintiff's disability retirement benefits (April 30, 2012; more than 750 days), is a relevant, determinative and controlling fact." *Plaintiff's Supplemental Brief*, *PAGEID* 1041. However, plaintiff's entitlement to disability benefits terminated as a matter of law on January 1, 2010, when he became an elected official for the Village of New Richmond. Plaintiff's

30

reliance on any alleged action or inaction by OPERS after January 1, 2010, could not have induced him to become an elected official on that date. It follows, then, that plaintiff's estoppel defense must fail.

Defendant has presented uncontested evidence that plaintiff received $106,672.54 in disability benefits from OPERS between January 2010, when plaintiff's entitlement to disability benefits ceased as a matter of law, and April 2012, when OPERS stopped paying disability benefits to plaintiff. *Affidavit of Jeremy Polley*, ¶ 12. Because plaintiff's entitlement to benefits ceased on January 1, 2010, he must, as required by O.R.C. § 145.563, repay to OPERS the disability benefits paid to him after that date. Defendant is therefore entitled to summary judgment on its counterclaim for the overpayment of benefits.

**WHEREUPON**, based on the foregoing, *Plaintiff's Motion*, ECF 26, is **DENIED** to the extent that the motion seeks summary judgment on plaintiff's claims. *Defendant's Motion*, ECF 32, is **GRANTED**. Defendant is granted judgment on plaintiff's claims and on its counterclaim. The Court **AWARDS** defendant $106,672.54 pursuant to O.R.C. § 145.563 for the overpayment of disability benefits paid to plaintiff between January 2010 and April 2012, and may collect that amount in accordance with the procedures established in O.R.C. § 145.563(B).

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** accordingly.


March 12, 2015                              *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                            United States Magistrate Judge

31